HAPGOOD & COMPANY, PLAINTIFFS IN ERROR, V. JERUSHA A. ELLIS AND OTHERS, DEFENDANTS IN ERROR.

**Pleading:** FORECLOSING MORTGAGE: ANSWER: RES ADJUDICATA. In a foreclosure suit where several parties are made defendants as lien holders, subsequent purchasers, or lessees of the mortgaged premises, their several answers claiming rights as such lien holders, subsequent purchasers, or lessees, may be regarded also as cross-petitions for relief as against their respective co-defendants as well as against the plaintiff. And any such defendant, regularly served with process, who fails to answer any material allegation contained in the answer of his co-defendant is bound thereby as well as by the decree founded thereon, and unless he appeals therefrom the same becomes as to him *res adjudicata.*

ERROR to the district court of Fillmore county, Tried below before WEAVER, J.

*James P. Maule,* for plaintiffs in error, cited Wells Res Adjudicata, secs. 251 to 281. *Barker v. Cleveland.* 19 Mich., 230. *Danaher v. Prentiss,* 22 Wis., 311. *Hackworth v. Zollars,* 30 Iowa, 433. *Le Guen v. Gouverneur,* 1 Johns. Cases, 492. *Doty v. Brown,* 4 N. Y., 71. *Castle v. Noyes,* 14 id., 329.

*Eller & Chase,* for defendants in error, cited *Reed v. Kemp,* 16 Ill., 445. *Talbot v. McGee,* 4 Monroe, 375. *Johnson v. Morrison,* 5 B. Monroe, 106. *Weisman v. Smith,* 6 Jones, Eq., 124. *Fletcher v. Holmes,* 25 Ind., 458. *Coit v. Tracy,* 8 Conn., 268. *Jackson v. Hazen,* 2 Johns., 22. *Nickerson v. California Stage Co.,* 10 Cal., 520. *Eastman v. Cooper,* 15 Pick., 276. 2 Smith's Leading Cases, 627.

COBB, J.

The pleadings in this case are voluminous, and in order to a proper understanding of the question involved, it will be necessary to recite them at tedious length.

The real estate in question was owned by C. Maxon Northrup, and while so owned by him, several judgments at law were recovered against him by different parties, among others the plaintiffs in error here, which judgments it is claimed by them became and were liens upon said real estate. Said Northrup conveyed said real estate in separate parcels and moieties to Susan F. Wells and Hattie E. Wells, and took mortgages back for the purchase money for the same. Afterwards the said Susan F. Wells conveyed her part and moiety of the said real estate to the said Hattie E. Wells, who afterwards conveyed the said real estate to the defendant in error, Jerusha A. Ellis. The defendant in error, James K. Ellis, is the husband of the said Jerusha A. Ellis, and J. W. Eller is the trustee of an express trust out of the said real estate.

On the 18th of October, 1877, the said Northrup commenced two actions in the district court of Fillmore county, for the purpose of foreclosing the said mortgages, one against the said Susan F. Wells and husband, the other against the said Hattie E. Wells

and husband.   The Ellis' and all of Northrup's judg-
ment creditors were made defendants in each of said
suits.   The judgment lien holders and J. W. Eller,
who was not an original defendant, answered in each
of said cases.   But neither of the Wells or Ellis,
though duly served with process, answered in either
of said suits.   Thereupon the said causes were referred
to a referee, according to the practice of the court.
The referee, after examining the pleadings and evi-
dence offered, made his findings and reports in sub-
stance that there was due to the said C. Maxon Northrup
on one of the said mortgages the sum of $1617.10, and
on the other of said mortgages the sum of $2160.70,
and that the same was the third lien on the said
premises.   The said reports of the said referee were
affirmed by the said district court, and decrees of fore-
closure and sale made by the said court in each of the
said causes.   The petition further states that after the
rendition of said decree the said Jerusha A. Ellis paid
to the said C. Maxon Northrup and his assigns the
whole amount of the said principal indebtedness, in-
terest, etc.   The petition also states that "the said
Jerusha A. Ellis has fully paid all other notes de-
scribed in and secured by the said two mortgages
hereinbefore described, and upon which the said ac-
tions were founded, except the one therein described
for $661.10, due January 1, 1877, to Nicholas Nigh."

The said petition further states that in the said two
causes of *C. Maxon Northrup vs. Charles Wells and others*,
and same plaintiff *vs. George Wells and others*, which
said causes were referred to W. H. Morris as referee,
as hereinbefore stated, the said referee found the fol-
lowing facts relative to the interest of Hapgood & Co.,
plaintiffs in error herein, in each of said causes: "That
there is due the defendants Hapgood & Company the
sum of $569.16, and that the same is a first lien on the

premises mentioned in plaintiff's petition." Which said report was confirmed. And the said petition contains the further allegations in reference to the said claim of Hapgood & Company: "That on the third of October, 1874, there was filed in the probate court of Fillmore county a complaint entitled *Hapgood & Co., plaintiffs, v. C. M. Northrup, doing business in the firm name of C. M. Northrup & Co.* * * That on the second day of November, 1874, W. H. Blain, probate judge, made of record, without evidence, an order that judgment be decreed in favor of the plaintiffs Hapgood & Co., and against the defendant C. M. Northrup, in' the sum of principal, $204.15, four months interest at ten per cent, $6.80, and costs taxed at $4.10; total, $215.05; but did not then or after that time enter any judgment in said cause And afterwards the following is made to appear of record in said cause: This judgment is satisfied by note of Wells secured by mortgage on mill at Fillmore, dated April 26, 1876, given to * * * plaintiff's attorney * * * That on the fourth day of January, 1875, there was filed in the probate court of Fillmore county a complaint entitled *Hapgood & Co., plaintiffs, v. C. M. Northrup.* That on the fourth day of January, 1875, H. P. Finnigan, probate judge, entered a pretended judgment upon the record in his docket, as follows: It is therefore ordered and adjudged by the court that said plaintiffs Hapgood & Co. have and recover of said C. M. Northrup the sum of eighty dollars, with interest from January 1, 1875, and costs of this suit, and that they have execution therefor * * And that afterwards the following was made to appear of record in such cause: "This judgment satisfied by note of Wells secured by mortgage on mill property at Fillmore, dates April 26, 1875, to * * * plaintiffs' attorney, for amount of this judgment." That on the fourth day of

January, 1875, there was filed in the probate court a complaint entitled *Hapgood & Co. v. C. M. Northrup & Co.* That on the same day, H. P. Finnigan, probate judge, entered a pretended judgment upon the records in his docket as follows: It is therefore considered ordered and adjudged that said plaintiffs Hapgood & Co. have and recover of said C. M. Northrup the sum of $204.10, with interest at ten per cent from Nov. 15, 1874, together with costs of suit, and they have execution therefor * * And that afterwards the following is made to appear of record in said cause: "This judgment is satisfied by note of Wells secured by mortgage on mill property at Fillmore, dated April 26th, 1875, for amount of this judgment given to *

* * " That afterwards, on the third day of July, 1875, there was filed in the clerk's office of the district court * * * in and for Fillmore county, a transcript of the docket of the said probate court in each of said causes, the same as herein set forth, except that part relating to the satisfaction of said judgments. That said transcripts or either of them were not at that time nor have the same since that time been entered upon the judgment record of the said district court, and that afterwards, to-wit, on the 3d day of April, 1879, that part of said transcript relating to the satisfaction of said judgment were filed in said office *

* * That on the —— day of 187— the said judgment hereinbefore described and transcript to the said district court for the sum of $80.00, was, by the attorney of record of Hapgood & Co., * * * fully satisfied, and receipted upon the execution docket of said district court * * * That on the 15th day of September, 1877, the said Hapgood & Co., by * * * attorney of record and attorney in fact, did by writing under seal duly acknowledged, release the said two other pretended judgments in favor of Hapgood & Co.

and against C. M. Northrup * * * And said plaintiffs further show that on the 1st day of September, 1875, the said C. M. Northrup endorsed in blank and transferred and delivered to Hapgood & Company two promissory notes dated April 26, 1875, one due November 1, 1875, and one due January 1, 1876, each for the sum of two hundred and twenty dollars, with interest thereon at the rate of ten per cent per annum from the date thereof, and providing for attorney's fees and signed by George Wells, which notes were described and the payment thereof secured by the mortgage heretofore described and set forth * * * That at the time said notes were so transferred and delivered to Hapgood & Company, the following was endorsed on the said note January 1, 1876: "When the within note is paid the first judgment against said Northrup in favor of Hapgood & Co. is to be satisfied in probate court * * * " That said note was received by Hapgood & Co. so endorsed about the 1st day of September, 1875, on account of the judgment against the said C. M. Northrup in favor of Hapgood & Co., * * * and upon the receipt thereof Hapgood & Co. contracted and agreed that when said note should be paid the said Hapgood & Co. would fully release and satisfy said judgment, and that the payment of said note should be in full satisfaction of said judgment. That at the time the said notes were transferred to said Hapgood & Co., the following was endorsed on the said note due November 1, 1875: "When the within note is paid the second judgment against said Northrup in probate court, in favor of Hapgood & Co. is to be satisfied * * * " That said note was received by Hapgood & Co. so endorsed, about the first day of September, 1875, on account of the judgment against the said C. M. Northrup in favor of Hapgood & Co. * * * and upon receipt thereof

Hapgood & Co. agreed and contracted, that when said note should be paid the said Hapgood & Co. would fully release and satisfy said judgment, and that the payment of said note should be in full satisfaction of said judgment. That the said plantiff, Jerusha A. Ellis, fully paid to the said Hapgood & Co. the said two promissory notes last hereinbefore described, and has the same in her possession, and now offers to bring the same into court that the same may be cancelled."

The answer of the defendants, Hapgood & Co., sets up the recovery by them of the three several judgments against the said C. Maxon Northrup in the probate court of Fillmore county. That the said court then and there had jurisdiction of the person of the said Northrup, and that said judgments were regularly rendered and entered. That on the 3d day of July, 1875, the said Hapgood & Co. caused transcripts of said judgments to be filed in the office of the clerk of the district court in and for said county, and to be duly entered upon the judgment record in and for said county, and the said Northrup was then the owner of said south-east quarter of the north-east quarter of section one, township eight north, of range four west, in said county, that said judgments became, and thereby were, liens upon the said lands. That on the first day of November, 1875, W. H. Blain, then probate or county judge of said county of Fillmore, tendered his resignation of said office to the county commissioners of said county, who duly accepted the same, whereby a vacancy in said office of probate or county judge occurred. That the said county commissioners to fill said vacancy then appointed the said C. M. Northrup probate or county judge, who immediately entered upon the duties of said office, and as such probate or county judge was the legal custodian of the record, docket, and papers of said office, and while the said C. M. North-

rup was probate or county judge as aforesaid, and while he had the dockets of said court in his possession, as aforesaid, he, the said C. M. Northrup, wrote upon the docket where the judgments against him were rendered the following, to-wit: "This judgment is satisfied by note of Wells secured by mortgage on Mill' property at Fillmore, dated April 20, 1875, for amount of judgment given to" * * all of which was written by the said Northrup without the knowledge or consent of the said defendants Hapgood & Co., and without the knowledge or consent of any agent or attorney of the said Hapgood & Co., all of which was and is utterly false and untrue, and said Hapgood & Co. nor any one for them has ever receipted said docket, nor received payment therefor, either in money or notes of any description, and that the same are unsatisfied. The said answer further denies that the said * * * ever was, either on the 15th day of September, 1877, nor at any other time the attorney in fact of the said Hapgood & Co., nor their attorney of record, only for the express purpose of answering for them in certain suits pending in the said court wherein the said C. Maxon Northrup was plaintiff, and the said Hapgood & Co. and others were defendants, and said * * was their attorney for the purpose of defending said suits for said Hapgood & Co., and that said *. * * as such attorney of record, had authority from the said Hapgood & Co. to receive from said C. M. Northrup or any one for him, cash payment of the said judgments in their favor and against the said C. M. Northrup, and no other authority whatever. That the said defendants deny that * * * as their attorney of record and as their attorney in fact, did on the 15th day of September, 1877, by writing of that date under seal duly acknowledged, release the two said judgments in favor of Hapgood & Co. and against the said C. M. Northrup, and they say

that any pretended release which the said    *    *    *
might have made as their attorney, either of record or
in fact, was wholly unauthorized by the said defend-
ants, and they totally disaffirm any such release and re-
fuse to ratify the same.    Said defendants deny that on
or about the first day of September, 1875, or at any other
time, the said C. M. Northrup endorsed in blank or in
any other way, and transferred and delivered to the said
defendants two promissory notes dated April 26, 1875,
one due November 1, 1875, and one due January 1,
1876, each for the sum of two hundred and twenty
dollars, with interest thereon at the rate of ten per
cent per annum from the date thereof, and providing
for attorneys' fees, and signed by George Wells, de-
scribed in and the payment thereof secured by the
mortgage, marked in plaintiff's petition "E," and said
defendants deny that said notes were received by them
on or about September 1, 1875, or at any other time on
account of said judgments against C. M. Northrup and
in their favor, and they deny that they or any one for
them ever took, had, or received said notes for any
purpose whatever, and said defendants deny that they
ever agreed and contracted that when said notes should
be paid that said defendants would fully release and
satisfy said judgments, and they deny that they ever
agreed or contracted that the payment of the said notes
should be in full or in part satisfaction of the said
judgments, and said defendants deny that said Jerusha
A. Ellis or any other person whomsover fully paid said
notes or any part thereof to the said defendants, and
said defendants say that said Jerusha A. Ellis nor any
one for her ever paid them or any of their agents or
attorneys any money whatever upon said judgments.
The said defendants as a third defense further allege
in their said answer, that at the time of the purchase
of the real estate by the said Jerusha A. Ellis from the

Wells', it was mutually agreed by and between them that she, the said Jerusha A. Ellis, would and did assume to pay the said judgments of the said Hapgood & Co., which were then understood and admitted by all parties concerned to be liens upon said real estate, and that she has never paid them or any part thereof; and the defendants also set up in their said answer that the said mortgages from the Wells' to C. M. Northrup were foreclosed by action in the said court, that the said defendants with others were made defendants in said action as lien-holders against said premises, that the said Jerusha A. Ellis and James K. Ellis, subsequent purchasers thereof, were also made defendants in said action.    That said Hapgood & Co. answered in said actions, setting up their said judgment lien and alleging that the same remained of force and wholly unsatisfied and unpaid.    That said causes were referred to and tried by a referee, who found that there was then due to the said defendants, Hapgood & Co., on their said judgments the sum of $569.16, and that the same was a first lien upon said premises.    That the said finding of said referee was approved by the court and a decree entered accordingly.

It is to be regretted that the plaintiffs in error, having brought so voluminous a record to this court, should have omitted to also bring copies of the final decrees in said foreclosure suits, or at least one of them, yet the writer as an individual member of the court, thinks that any decree which the said court could have properly rendered in said causes must have contained authority to the said Hapgood & Co. to enforce the same by an order of sale in case of the failure to do so on the part of the plaintiff therein.    And that in the absence of either suggestion or evidence to the contrary, this court must presume that such decrees do contain such authority.

The plaintiffs interposed a general demurrer to the said answer of Hapgood & Co., which was by the court sustained, and a decree entered perpetually enjoining the said Hapgood & Co. from enforcing their lien, etc.

The allegations of the petition, so far as the lien of the plaintiffs in error is concerned, present five points. 1. They deny that plaintiffs in error obtained judgments against Northrup in the probate court. 2. They allege that such judgments were satisfied in the docket of the said probate court. 3. They deny that said judgments were ever entered on the judgment record of the district court so as to become liens upon the real estate in question. 4. They allege that such judgments were satisfied of record in the district court. 5. That C. M. Northrup delivered two of the notes executed to the Wells' to the plaintiffs in error, which they received with the agreement that when paid they should be in full for the said judgments, and that said notes have been paid to the plaintiffs in error; and I perhaps ought to notice as a 6th point the general assertion that Jerusha A. Ellis, one of the defendants in error, has paid the said notes, etc.

It is perhaps sufficient for the purposes of this case to say that each one of the above stated points of the petition is met by a specific denial in the answer.

The plaintiffs in error in their answer also set up in bar of the plaintiff's action, the former adjudication of the same questions in the two cases of Northrup v. Wells et al.

Without stopping to comment upon the curious anomaly presented by those cases, of a party suing his own creditors, further than to say that probably they alone could complain of such proceeding, as the counsel in their brief desire the opinion of the court as to the effect of the former adjudication, I will say that as

I understand it, under our law and system of pleading, where in a foreclosure case several parties are brought into court and declared against as subsequent incumbrancers, purchasers or lessees of the mortgaged premises, and called upon to set out their several and respective liens, claims, and rights therein, their respective answers may also be considered as cross-petitions for relief as against each other, as well as against the plaintiff. Any one of said defendants regularly served with process who fails to answer any material allegation contained in the answer of his co-defendant is bound thereby and by the decree founded thereon, and unless he appeals from such decree, the same becomes as to him, *res adjudicata.*

Under our system of practice, when a party brings a suit as plaintiff, or in a suit is served with process as a defendant, after answer day, at least, he must take notice of all pleadings filed in the case, either by his opponent or by his co-plaintiff or defendant, and ordinarily at least, pleadings are not required to be served or notice of their filing given.

If I am not wrong in the above views, then the field of inquiry in this case, from a very broad one, is brought to a rather narrow one. And the question is, whether the defendant in error, Jerusha A. Ellis, has paid to the plaintiffs in error the money found due them by the referee in the said causes, or one of them, as affirmed in and by the decree of the district court, and upon that point the pleadings on the part of the plaintiffs in error are not demurrable.

The decree of the district court sustaining the demurrer to the answer, as well as that perpetuating the injunction in said action, is reversed, and the cause remanded for further proceedings, according to law.

REVERSED AND REMANDED.